### No. 2,445.

J. MORA MOSS, RESPONDENT, *v.* JOHN L. WILSON, *et al.* APPELLANTS.

CONTRACT.—SEVERAL OBLIGATION.—An agreement by a number of persons which states that the undersigned "will pay the sum annexed to their names," in order to make up an aggregate sum to be paid to another party, in consideration of services to be rendered, creates a several and not a joint obligation.

APPEAL from the District Court of the Third District, Alameda County.

The facts are stated in the opinion.

*W. H. Patterson* and *N. Hamilton*, for Appellants.

The proposition of Sloan and Hartman was made, not to any persons by name, but to such as should undersign or subscribe. In the light of the subject to which the contract related, it may be correctly assumed that the object and expectation of Hartman and Sloan was to get so many of the settlers (squatters) on the Mission lands as would secure to them the fees they were desirous to earn or secure, without reference to who the subscribers might be.

On the other hand, the squatters, as they were called, *i. e.* persons opposing the confirmation of the grant, were willing to secure the services of Hartman and Sloan, and so

co-operate to that end. But when they came to consider and act upon the proposal, they agreed, each for himself, to pay so much money toward the amounts to be paid as he should subscribe for, that is, such sum as he should set opposite his name, and would pay, as required by the terms of the proposal, and thus by separate subscriptions make up the aggregate sum, less the advance payment, which they had already contributed, and which was paid on the spot. That this rendering and construction of the undertaking of the subscribers is the correct one we refer to *Lee* v. *Nixon*, (28 Eng. L. and Eq. R. 70); *Collins* v. *Prosser*, (1 B. & C. 682, 8 Eng. Com. L. R. 289); *Keightley* v. *Watson*, (3 Exch. 716); *Servante* v. *Jaines*, (10 B & C. 410, 21 Eng. C. L. R. 177); Chitty on Contracts, 129; Id. 128, citing *Collins* v. *Prosser*, and cases cited, and *Lee* v. *Nixon*, *supra*.

The rule which holds that "if a sum *in solido* is advanced by several persons, the law implies a joint promise of repayment to all," or to state it in the language of another case, *English* v. *Blandell*, (8 Carr. & Payne, 332): "If several persons contribute their several proportions of a sum of money which is to be paid under a special contract to which they are parties, and the money is advanced as a sum *in solido*, and the contract is afterward abandoned or rescinded, the *implied* promise to refund the money arises in favor of all," does not apply.

This rule laid down in the case cited, and in *May* v. *May*, (1 Carr. & Payne, p. 44), and in *Brand* v. *Boulcott*, (3 Bos. & Pul. 235), is based on an *implied* obligation to refund to all jointly the aggregate sum they have severally contributed *in solido*, *i. e.*, in a whole sum paid by all without division. If the agreement had provided *expressly* for repayment, the *expressed* terms would control, and if the payment is made in several sums by each contributor, then repayment shall be made to them severally. This is the doctrine of *May* v. *May*, *Brand* v. *Boulcott* and *Osborne* v. *Harper*, (5 East. 225.)

It follows, therefore, from these authorities, that in the case of several persons undertaking to pay several sums,

though such several sums go to make up an aggregate sum, their undertaking is several and not joint, though the undertaking with them by the other parties to whom the aggregate sum is paid, be joint. (See also Chitty on Contracts, 128, citing *Berkley et al.* v. *Pesgrove,* 1 East. R. 226; and *Smith* v. *Pocklington,* 1 Comp. & Jerv. 445; *St. Paul's Church* v. *Ford & Pomeroy,* 31 Barb. R. 16; *Ward* v. *Ward,* 15 Pick. 511; *Stevens* v. *Hall,* 19 N. H. R. 560.)

In the case at bar, it cannot be supposed that any one of the subscribers would intentionally have bound himself to pay for defending the claims of his associates in which he had no interest. No one of them was interested in defeating the Mexican grant beyond the extent of his own possession, but each was willing to pay to the extent of his voluntary subscription, and so expressed himself on the face of the agreement.

*McCullough & Boyd,* for Respondent.

The contract sued on is *joint only* as between plaintiff and defendants.

1st. It requires express words to create a several liability. (*Brady* v. *Reynolds,* 13 Cal, pp. 31, 42; 1 Chitty on Pleadings, p. 41; 1 Parsons on Contracts, p. 11; 2 Parsons on Contracts, p. 45.)

2d. There are no such express words in this contract. The contract on the part of Sloan and Hartman, as contained in their proposition, was joint. The acceptance of the proposition, on the part of the defendants, was joint. "The undersigned (settlers) agree to the foregoing propositions."

3d. The contract was two-fold in its nature. 1st. Between Sloan and Hartman, and the defendants, joint. 2d. Between the defendants, as settlers themselves, several; "and will pay the sum annexed to their names;" that is, will pay as amongst themselves *separately* the sum subscribed in order to pay the sum *jointly* agreed upon to be paid to Sloan and Hartman. (*Byers* v. *Doby,* 1 H. Blackstone, p. 236; *Muzzy* v. *Whiting,* 10 Johns. p. 228; *Marshal* v. *Smith,* 15 Maine, (3 Shep. p. 17.)

TEMPLE, J., delivered the opinion of the Court, CROCK-
ETT, J., RHODES, C. J., and WALLACE, J., concurring:

In 1857 Sloan and Hartman, plaintiff's assignors, made
a proposition in writing to the settlers on the land known as
the "Pico claim" (which claim was then pending in the
United States' Courts for confirmation), to assist the Gov-
ernment of the United States in opposing the confirmation
of the claim; and to furnish the necessary evidence there-
for, the settlers to pay in hand the sum of five hundred
dollars to enable Sloan and Hartman to defray the neces-
sary expenses of litigation, and to pay the further sum of for-
ty-five hundred dollars in certain contingencies, and conclud-
ing as follows: "It being understood that the full amount
which said settlers are to pay to said Sloan and Hartman
for a final rejection of said claim is the sum of five thousand
dollars, and of which said sum said Sloan and Hartman are
to pay all the necessary costs and charges."

Upon the paper containing this proposition Sloan and
Hartman wrote an acceptance to be signed by the settlers,
should they accede to the terms proposed. The acceptance
is ·in the following words: "The undersigned settlers, on
the within named claim, agree to the foregoing proposition
and will pay the sum annexed to their names, for the pur-
pose aforesaid, as the same may be required according to
the terms of the within."

This paper purports to have been signed by thirty-three
persons, each one of whom, except the last, has set after
his name the sum of $125. No sum is placed after the last
name. The document was returned to Sloan and Hartman,
signed as above stated, and the first installment of $500
paid. Sloan and Hartman, thereupon, as is alleged,
proceeded to perform the stipulated services, and this suit
is brought to recover upon the contract, charging the
signers jointly. Only eight of the defendants were served
and judgment having been rendered against them, this
appeal is taken.

The only question of moment in the case is whether the

liability of the defendants is joint, or several only. The act contracted to be performed by Sloan and Hartman was an act to procure the rejection of the Pico claim. The amount to be paid was one sum, and the first payment was made by Tyson, one of the settlers, for himself and the others. The settlers agree in terms to the proposition made them. To this point there is nothing to indicate that a several liability only was intended, and had this been all, no difficulty could have arisen; and the only question is whether the addition of the words "and will pay the sum annexed to their names for the purposes aforesaid," under the circumstances of this case, limits the liability of the parties signing the acceptance to the sums respectively set down by them.

We are inclined to regard this expression as a limitation upon the liability of the parties signing the acceptance. Unless this be the meaning of the language used, we are unable to give to it any force whatever. We cannot perceive the force of the suggestion of plaintiff's counsel, that the contract was joint as to Sloan and Hartman, and several among themselves. It certainly could not have been intended to limit the right to compel contribution, should any one pay more than his share; and the language used is not appropriate as expressing the proportion in which each shall contribute to make up a stipulated sum; and in this respect the contract differs from the cases cited by plaintiff's counsel. The agreement to pay the amount set opposite their names is in terms with Sloan and Hartman, and is plainly stated to be for the purposes of raising the sums required by them. Although accepting in general terms the proposition made, it was perfectly competent for the defendants to limit their liability to specific amounts; and if they have done so, undoubtedly they will be held liable only according to the terms of the contract. We regard this contract as meaning precisely the same thing as though it had read that the undersigned would pay the sum annexed to their names, and no more. It was an express promise to pay that sum, thereby negativing any intention to pay more.

The case is not unlike the ordinary case of a subscription paper, where each subscriber promises to pay the sum set opposite his name, and the words "the undersigned" is of some force, as indicating that there had been no previous agreement among those who signed, but that each person should subscribe such sum as he was willing to give. It is unreasonable to suppose that any one would become jointly liable for any one who would sign an open subscription paper.

The idea seems to have been that the subscribers were willing to contribute certain specified amounts to make up the sum required by Sloan and Hartman, and it was probably thought that the sum could be raised in that way. And this accords with the situation of the parties who signed the acceptance. They were settlers upon the land claimed, and desired to have the claim rejected, in order that they might not be deprived of the advantages of possession. They had no joint interest in the subject of the controversy. They had a common, but no joint, interest in the act to be accomplished. There was no relation between them that would make it probable that they would be willing to undertake for each other, but the contrary. They may have had conflicting claims to the land. They certainly had, so far as appears, no joint estate or claim, and were not engaged in a joint enterprise or undertaking. The whole amount agreed to be paid may have, and most likely did exceed the value of any one claim at the time.

It does not appear to be necessary to discuss the other points raised upon this appeal.

Judgment and order reversed, and cause remanded.

Sprague, J., expressed no opinion.