[Civ. No. 1452.    Third Appellate District.—August 30, 1916.]

## GEORGE SHELTON, Respondent, v. D. B. MICHAEL et al., Appellants.

CONTRACT—CONSTRUCTION OF WAGON ROAD—JOINT AND SEVERAL LIABILITY OF SIGNERS.—A contract for the construction of a wagon road which recites that "the parties of the first part" (not named but described as "settlers" of a certain school district) agree to pay a named person, described as party of the second part, a certain sum per rod for the building of the road, creates a joint and several liability.

ID.— CONDITIONAL EXECUTION OF CONTRACT — SIGNATURE OF CERTAIN NUMBER OF PERSONS—INSUFFICIENCY OF DEFENSE.—In an action to recover the balance due on such a contract, where it is set up as an affirmative defense that it was agreed that the contract was not to be considered executed until at least a certain number of settlers had signed it, it is not error to refuse to instruct the jury that their verdict should be in favor of the "defendants," if they found that the writing was so executed, in the absence of any such limitation contained in the contract, or of any evidence except that of one of the eight signers that such was the understanding of the parties.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Charles Kasch, for Appellants.

Robert Duncan, for Respondent.

ELLISON, J., *pro tem.*—The complaint in this action sets forth: That in October, 1914, the defendants (there are nine of them) entered into a written contract with plaintiff in and by which he agreed to construct a wagon road in Mendocino County (describing it), and for his compensation therefor the defendants agreed to pay him two dollars per rod for all that portion thereof that had not been swamped out, and one dollar and fifty cents per rod for all that had been swamped.

That in pursuance of said contract he built 489 rods of road that had been swamped out, and 316¼ rods of road which had not been swamped out, and that the agreed price

therefor was $1,367.50. That he had been paid on account thereof three hundred dollars, and there is still due and unpaid to him for constructing said road the sum of $1,067.50, for which amount judgment was asked.

The answer is, first, a general denial of all the allegations of the complaint. It then affirmatively alleges that defendant on October 17, 1914, entered into a contract with plaintiff to build the road for the prices per rod stated in the complaint, and this is followed by:

"That it was expressly understood and agreed by and between the plaintiff and these defendants that before said contract should be made effective and binding on these defendants, or any of them, plaintiff should procure the signatures to said contract of A. E. Arens, Mrs. Ollie Sparks, and Mike Lynch, and it was an express condition and part of the consideration for the signatures of these defendants that plaintiff should secure twelve signatures to said agreement before these defendants, or any of them, should be bound by their said signatures; that it was never intended by plaintiff and these defendants that said contract should be made until at least twelve signatures were appended thereto."

It also alleged that the defendant did not construct the road in a good and workmanlike manner, and did not grade it seven feet wide, as provided in the contract. That large trees were left in the road, making it impossible for travel.

Trial was had with a jury, which found a verdict in favor of the plaintiff for the amount sued for. This was followed by a judgment, from which this appeal is taken, as well as from an order denying a motion for a new trial.

No point is made on this appeal that defendants sustained the defense alleged of improper work being done or that the roadbed was not graded according to contract. The principal point relied upon for a reversal is that defendants, by their evidence, sustained the defense set forth in their answer to the effect that the contract was not to be considered executed until at least twelve settlers had signed it, and that it was delivered to the plaintiff upon condition that it was not to be effective until such number of signatures had been obtained, and that the court erred in not giving certain instructions requested by them applicable to such defense.

For a proper understanding of counsel's position, and the ruling of the court in refusing to instruct as requested, it

becomes necessary to consider the legal effect of the contract sued upon and the testimony bearing upon its alleged execution and the instructions requested.

(1) The contract appears in full in the record, and upon a reading of it, it is noticed, first, that the names of the persons who were to sign it as parties of the first part are not stated in the body thereof.

They are only referred to in the first paragraph as "settlers" of a certain named school district in Mendocino County.

It contains no provision that it is not to become a binding contract until signed by at least twelve settlers. Upon this point it is silent.

It creates a joint and several liability: "The parties of the first part agree to pay George Shelton, party of the second part, $2.00 per rod for building the road, etc."

The record shows that there were some twelve or more persons owning land in Mendocino County, upon which was timber suitable for making ties and tan-bark. There was no road leading from any public highway to these lands and no way to get the ties and tan-bark out. All these settlers and land owners were interested in getting a road to these lands. Witness George Shelton testified: "I know all the defendants. They own redwood lands in this county and some tan-bark."

Some of these settlers met at the store of one McFaul to take steps to get the road constructed to these lands.

All of the nine persons who signed the contract were settlers and would be benefited by the construction of the road.

Section 1659 of the Civil Code provides: "Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several."

From the facts disclosed by the record, considered in the light of this code provision, it must be held that the contract is joint and several.

(2) The testimony bearing upon the execution of the contract may be summarized as follows: C. A. McFaul, a witness for the defendants, testified that the contract was drawn in his office, and first given to Mr. Michael (one of the defendants) to get signatures. He was to get particular signatures in a particular part of the county. Mrs. Olive Sparks was expected to sign. Mike Lynch was supposed to sign. After

Mr. Michael succeeded in getting some signatures, the contract was turned over to Mr. Shelton. He was to get signers and see Mike Lynch.

"It was supposed there should be twelve at least who would sign."

The defendant D. B. Michael testified: "I had an understanding with Mr. Shelton relative to getting signatures to it. We had a contract drawn up and I signed it first and was to take it and get all the signatures I could in my neighborhood, and he was to take it and get the rest down the coast. I secured the signatures I agreed to get. Mr. Shelton and I had a conversation relative to the number of people who should sign the contract before it would become binding. There were supposed to be twelve signatures. I said to Mr. Shelton that if we could not get over one-half dozen, or something like that, I didn't want it, because I could not afford to pay that much for the road. After I procured the signatures I agreed to procure, I sent the contract to Mr. Shelton."

The defendant Ben Bond testified: "I told him [plaintiff] that I would not put my name to the contract unless it was understood that all of twelve signers should be on the contract. That was agreeable to Mr. Shelton. Mr. Michael had the contract when I signed it, and Mr. Shelton was not present. There are twelve settlers in that country who would be benefited by the road, and I thought they probably all would sign it."

The above is the substance of all the evidence bearing upon this feature of the case.

(3) Several instructions were asked by the defendants as to this phase of the case, but they were all refused; and this refusal is assigned as reversible error.

The instructions were all similar to instruction VIII, and a quotation of it will be sufficient. It is as follows:

"Gentlemen, a delivery on condition is not a complete delivery until the condition is fulfilled. If you find in this case that the writing in evidence was delivered by those who signed it for the purpose of having Mr. Shelton secure twelve signatures thereto, and that it was the intention of the parties that it was not to become binding until twelve signatures were secured, then I charge you, there was no delivery and you must find for the defendants."

It is not reversible error to refuse a requested instruction that is not applicable to the evidence or that presents an erroneous theory of the case.

Referring back to the testimony, it will be observed that the witness McFaul is not one of the defendants. His testimony is not to the effect that there would be no contract unless so many as twelve signed it. His language is indefinite. "It was supposed there would be about twelve who would sign."

The defendant Michael used no language as a witness from which the conclusion can be drawn that he signed it upon the condition that it was to be inoperative unless twelve signatures were obtained to it.

The defendant Bond used language more definite and certain.

No one of the other seven defendants gave any testimony of any understanding or agreement as to the number of signatures it was expected there would be to the contract, or that any of them ever heard of the matter before the trial.

The instruction requested embraced all of the defendants. It is apparent from the evidence above referred to that the instruction was not applicable to it and was too broad. There was no evidence (as the instruction assumed) that any one of eight of the defendants signed the paper for the purpose of having Mr. Shelton secure twelve signatures to it, and no evidence that it was the intention of said eight defendants, or any of them, that the contract was not to become binding until twelve had signed it.

These eight defendants signed a joint and several contract without any limitation or condition, and it would have been error for the court to have instructed the jury as to them and their liability in the language of the refused instruction.

Whether such an instruction directed to the defendant Bond alone should have been given, we need not inquire, as no such instruction was asked.

In the notes to *Benton Co. Savings Bank* v. *Boddicker*, [105 Iowa, 548, 67 Am. St. Rep. 310, 75 N. W. 632], 45 L. R. A. 321, is found quite a full collection of decisions upon the signing of contracts upon an understanding that they were not to be operative until signed by others. We make the following quotation therefrom: "One who signs a joint and several bond, cannot excuse himself from liability upon the ground

that it appears on the face of the bond that it was intended to be signed by others who did not sign, unless he declares at the time that he would not be bound unless such signatures were obtained.''

"The requirement that others shall sign must amount to a condition that the bond shall not take effect without its performance as distinguished from a mere expectation that others shall sign." (See, also, *City of Los Angeles* v. *Millus,* 59 Cal. 444.)

(4) There was no error in admitting the contract sued upon in evidence. The alleged error is predicated upon the assumption that the complaint alleges a joint and several contract, and that the contract introduced was not such.

The complaint nowhere attempts to designate the contract as either joint or several or joint and several.

We have already declared that in our opinion the contract was joint and several.

It is claimed that as the figures $25 appear after the signature of the defendant Stevens and the words "for the swamped road" after the signatures of defendants Bond and Moller, the contract shows they had only assumed a limited liability, Stevens only for the sum of $25 and the other two named defendants only for money to become due on the part of the road designated as "swamped."

In the body of the contract, those defendants, without limitation, promised to pay for the construction of the road, and the words following their signatures are too indefinite to limit their liability. As counsel for respondent suggests, they may have been intended as mere memoranda to be used in some settlement to be made between the defendants.

The case is readily distinguishable from *Moss* v. *Wilson,* 40 Cal. 159, 162, relied upon by appellant. In that case the contract provided: "The undersigned settlers . . . will pay the sum annexed to their names." No such provision is found in this contract. In that case it does not appear that the signers had a joint interest in the act to be accomplished. The record in this case abundantly shows that all the signers were decidedly interested in having the road constructed.

In the brief of appellant it is stated: "There is a variance in that a different contract was proved than the one alleged. The plaintiff pleaded a contract to build a road and proved a contract to build a road and bridges. The plaintiff testified

that he did not build any bridges and that it was understood at the time that he was not to.'' This is followed by the statement that the plaintiff did not prove performance of the contract he introduced in evidence.

No point is made in counsel's brief that the court erred in admitting proof that it was understood that plaintiff was not to build the bridges. He could not well make such claim in view of the fact that most of the evidence along this line was brought out by him upon cross-examination of witnesses.

Waiving the question whether the contract as to building road and as to building bridges is severable, we think appellant did not raise the point now contended for with sufficient seriousness in the trial court to permit him to ask for a decision upon it here.

The answer set up two separate defenses, but in neither did it allege the contract was different from the one stated in the complaint.

When the contract was offered in evidence, counsel objected on the ground of variance, in that the complaint alleged a joint and several contract, and the contract offered was joint, but said nothing about a variance because of the provision for building bridges. No motion was made for a nonsuit upon the ground of variance.

No instruction was requested to the effect that plaintiff could not recover because he had not built the bridges. Neither court nor counsel were in any way apprised that this point was relied upon or would be. If timely notice had been given thereof in some of the ways suggested, perhaps plaintiff would have asked leave to amend his complaint to show why he had not built the bridges.

An examination of the record fails to disclose that the trial court ruled upon the point or was asked to except by objections to two questions near the end of the trial, and counsel in his brief does not assign these rulings as error, and could not well do so in view of the condition of the record at the time the objections were made. Besides, the evidence that was admitted without objection makes it clear that it was never intended the plaintiff should build the bridges, or if such intent existed at the time the contract was written, it was waived and abandoned by mutual consent.

The plaintiff testified: ''I did not build the bridges. I had nothing to do with the bridges. It was the understand-

ing that Michael was to put them in. All the parties said I was not to build the bridges. At the time the contract was signed, it was understood I was not to build the bridges."

The witness McFaul testified: "Michael said he would build them [the bridges] on the same day the contract was drawn up."

The defendant Michael testified: "At the time the contract was drawn, I said we should have some arrangement made about these bridges, and said at the time I would build the bridges for three hundred dollars if no one else wants to. I heard Mr. Shelton say that he would not have anything to do with the bridges. I have heard these others say they have heard him say so."

It was not error to admit evidence to prove that money was not deposited in bank as provided in the contract.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.