Filed 11/3/20  Choy v. Ribeiro CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| SEAN CHOY et al., | C080715 |
| Plaintiffs and Respondents, | (Super. Ct. No. PC20120295) |
| v. | |
| JOHNNY R. RIBEIRO et al., | |
| Defendants and Appellants. | |

This appeal questions who is liable for the severance pay owed two employees under their employment contracts—their employer alone or also their employer's owner and president?  Johnny R. Ribeiro, the company's president, signed one of these contracts in his individual capacity and in his representative capacity on behalf of the company. He signed the other contract in his individual capacity and in his capacity as the trustee for his trust, the Johnny R. Ribeiro Separate Property Trust (the Trust), which owns the company.  Under both contracts, Ribeiro and the company offered separate performances to the two employees—the company would pay the employees' salary, bonuses, and

1

severance pay in the event of early termination, and Ribeiro would pay the employees a portion of certain distributions he received relating to the company's projects. The Trust, although a signatory to one of the contracts, was never mentioned in the body of either contract. The issue raised here is whether Ribeiro and the Trust, to the extent they signed these contracts, are jointly and severally liable for the company's obligations under the contracts, even though neither contract speaks to this issue.

The trial court found they were, reasoning that Ribeiro, the Trust, and the company were all alter egos of one another. The two employees agree with the finding of liability, though they rely on different grounds. First, they contend Ribeiro and the Trust are the company's successors and assigns and are, for that reason, liable for the company's obligations. Second, they claim Ribeiro and his Trust, to the extent they signed the employment contracts, agreed to act as guarantors who would cover the company's obligations in the event of the company's default.

Like Ribeiro and the Trust, we find none of these three theories of liability persuasive. First, the two employees offered insufficient evidence to show that Ribeiro, the Trust, and the company were all alter egos of one another. Among other shortcomings, they failed to provide any evidence to show Ribeiro or the Trust acted in bad faith—a necessary requirement to invoke the alter ego doctrine.

Second, we reject the employees' argument that Ribeiro and the Trust are the company's successors and assigns. According to the employees, because the Trust owns the company and Ribeiro is the Trust's beneficiary, it follows that Ribeiro and the Trust are the company's successors and assigns. But the employees confuse a company's successors and assigns with its shareholders. A company's successor or assignee is a separate entity that acquires some or all the company's assets and liabilities. But a shareholder is different. Although a shareholder may wholly own a corporation, it does not for that reason own the corporation's assets and liabilities. The employees' contrary

2

position is inconsistent with the basic corporate principle that shareholders are not personally liable for a corporation's debts.

Finally, we reject the employees' contention that Ribeiro is liable as a guarantor who promised to answer for the company's debts, though we find the Trust's potential liability on this ground more complicated and ultimately conclude that remand is appropriate to determine the Trust's liability, if any. The employees' argument here is principally premised on the rule that an officer of a company who twice signs a promissory note—once in his representative capacity and once in his individual capacity—is presumed to have personally endorsed the note rather than merely witnessed it. In addressing this argument, we distinguish between Ribeiro and the Trust. Ribeiro, to begin, did not simply affix his personal signature to his company's contracts. He instead signed contracts that imposed certain obligations on him personally and separate obligations on the company. Under established rules of contract interpretation, Ribeiro's and his company's separate promises under the contracts created several, not joint, obligations. But the Trust sits in a different position. Unlike Ribeiro, the Trust promised nothing under the one contract it signed, and it was not once mentioned in the body of either contract. These facts created an ambiguity about the Trust's intended role that warranted the consideration of extrinsic evidence, if any were offered, to resolve the ambiguity. Because, however, the court below improperly refused to consider Ribeiro and the Trust's offered extrinsic evidence about this ambiguity, we remand on this point to allow the court to reevaluate the Trust's potential liability in light of this evidence.

## BACKGROUND

### I

Ribeiro Development, Inc. (RDI) develops and manages commercial real estate. Ribeiro is its president and the Trust is its owner.

3

Sean Choy and Joseph Oloriz joined RDI as employees in 2003. Oloriz joined as the head of RDI's design department, and Choy joined as a project manager and was later promoted to vice president of the company.

Both Oloriz and Choy at some point entered into multiyear employment agreements with RDI that were largely identical. Each contract included three parties: (1) the "Employee," defined as either Choy or Oloriz; (2) the "Employer," defined as RDI; and (3) "Ribeiro," defined as Ribeiro. Under their respective contracts, Choy and Oloriz would perform services on behalf of both RDI and Ribeiro. Choy's contract, for example, noted that RDI "wishe[d]" to use Choy's "experience and skills . . . in various aspects of its business and in the business of its affiliates," and Ribeiro, "either directly or indirectly through controlled entities," also "wish[ed]" to use Choy's "expertise and skills . . . in locating, acquiring, planning, developing, and, constructing, commercial real estate projects." The contract added that Ribeiro, through various LLCs he owned, intended to purchase real estate and then contract with RDI to develop these properties, with Choy playing a supervisory role in RDI's development of the properties. Oloriz's contract, although phrased somewhat differently, was substantively similar. Like Choy's, Oloriz's agreement noted that RDI "wishe[d]" to use his "experience and skills . . . in design and construction related services." And like Choy's, Oloriz's contract signaled that he would play a role in RDI's development of certain real estate projects that Ribeiro's LLCs owned.

In exchange for Choy's and Oloriz's services, RDI agreed to pay their base salary and bonuses and Ribeiro agreed to grant them a share of the distributions he personally received from his LLCs. Specifically, RDI would pay Choy's and Oloriz's base salary and bonuses, and in the event of their early termination, would also pay their "current base salary for three (3) years" following termination. Ribeiro, in turn, would pay Choy and Oloriz 10 percent of the distributions he received from his LLCs.

4

Choy and Oloriz signed their respective contracts in their individual capacities, and Ribeiro signed each twice in different capacities. He signed Oloriz's contract in his individual capacity and in his representative capacity on behalf of RDI. And he signed Choy's contract in his individual capacity and in his representative capacity on behalf of the Trust.

In late 2010—about three years before the two employment contracts were to expire—RDI fired both Choy and Oloriz. Their terminations followed a steep decline in RDI's fortunes following the recession that began in 2008. Before the recession, RDI had over 20 employees. But following years of substantial losses, RDI was left with only four employees at the time of Choy's and Oloriz's terminations. RDI declined to pay either Choy or Oloriz their salaries following their terminations.

## II

Shortly after being fired, Choy and Oloriz filed suit against RDI, Ribeiro, the Trust, and several others,[1] alleging, among other things, that Ribeiro and the Trust were obligated to pay their "current base salary for three (3) years" following their terminations per the terms of their employment agreements. Their complaint also included several other causes of action that were later stayed after the court found them subject to arbitration.

After a bench trial, on April 17, 2015, the trial court issued a statement of intended decision finding both Choy and Oloriz were entitled to severance pay under the terms of their employment contracts, though it did not say which of the three defendants were responsible for paying these amounts. The court notified the parties that they could file

---

[1] Choy and Oloriz also named Ribeiro's father—the similarly named Johnny A. Ribeiro—and his father's trust in their complaint. But Choy and Oloriz later dropped both from their suit.

5

"a proposal or objection to its contents within the time limits specified by applicable rule," and if they did not, the court's intended decision would become its statement of decision.

Shortly after, RDI, Ribeiro, and the Trust requested a statement of decision per California Rules of Court,[2] rule 3.1590(d)—a rule allowing parties, within 10 days of the service of a tentative decision, to request a statement of decision addressing specified controverted issues. Relying on this authority, they asked the court, among other things, to issue a decision addressing whether RDI alone was responsible for paying Choy's and Oloriz's severance pay—something the court's April 17, 2015 statement of intended decision did not cover. In response, the court updated its earlier statement of intended decision and, in its June 3, 2015 statement of decision, held all defendants jointly and severally liable for paying the ordered severance amounts. It reasoned that sufficient evidence in the record supported a finding that RDI, Ribeiro, and the Trust should be jointly and severally liable, and to the extent defendants sought to rebut this evidence, it was too late as any argument on that point was now waived.

On June 17, 2015, RDI, Ribeiro, and the Trust filed an objection to the court's statement of decision per rule 3.1590(g)—a rule allowing parties to file objections to a "proposed statement of decision" within 15 days of service of the decision. Among other things, RDI, Ribeiro, and the Trust contested the court's finding that they had not raised at trial the question of who should be liable for severance pay. In their view, they had offered significant evidence to show that only RDI should be liable to pay any ordered severance amount. But the trial court rejected these objections, finding them untimely. The court reasoned that its April 17, 2015 statement of intended decision, not the later June 3, 2015 statement of decision, was the "proposed statement of decision" that

_____

[2]     All further rule references are to the California Rules of Court.

6

triggered the 15-day clock of rule 3.1590(g). Even if the objections were timely, moreover, the court wrote that it would have rejected them anyway. Echoing its June 3, 2015 statement of decision, the court explained that its decision was supported by the evidence offered at trial, and to the extent defendants sought to rebut this evidence, those arguments were now untimely.

RDI, Ribeiro, and the Trust afterward filed a motion for a new trial or a modification of the statement of decision under Code of Civil Procedure section 657 and 662, again contending that RDI alone should be liable to pay the ordered severance amounts. But the court again found that RDI, Ribeiro, and the Trust had failed to preserve the issue by "not present[ing] [it] at trial" and "only briefly and incompletely rais[ing]" the issue in their pretrial brief. The court then concluded that substantial evidence supported a finding that Ribeiro was jointly and severally liable for both Choy's and Oloriz's severance pay. It also found sufficient evidence supported a finding that the Trust was jointly and severally liable for Choy's severance pay, since it had signed Choy's employment agreement.

Following Choy's and Oloriz's dismissal of their remaining claims that had earlier been stayed pending arbitration, the trial entered a final judgment in favor of Choy and Oloriz. The court found RDI, Ribeiro, and the Trust were jointly and severally liable to pay the ordered severance amounts—$466,856.40 to Choy and $350,142.30 to Oloriz.

Ribeiro and the Trust timely appealed the court's judgment.

STANDARD OF REVIEW

Our standard of review on this appeal is generally de novo. We review de novo a trial court's application of the law to undisputed facts. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.) We also generally review de novo a trial court's interpretation of a contract, as the meaning of a contract is a question of law. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866.) But in the event the parties have offered conflicting extrinsic evidence to aid in the contract's interpretation, we will affirm the

7

lower court's ruling on that conflict if supported by substantial evidence. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746-747.) We will also affirm the trial court's findings on other disputed factual issues if supported by substantial evidence. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)

DISCUSSION

I

At the outset, we consider Ribeiro and the Trust's claim that the trial court erred in finding they waived their argument that liability should have been limited to RDI alone. Ribeiro and the Trust contend this error was twofold. First, they assert the court, in its June 3, 2015 statement of decision, wrongly found they failed to offer any evidence at trial that liability should have been limited to RDI. Second, when they objected to the statement of decision on this ground, they contend the court erred in finding their objections to the court's decision untimely. We agree with Ribeiro and the Trust on both counts.

A

In its June 3, 2015 statement of decision, the trial court found Ribeiro and the Trust failed to "put on any evidence" or raise "any argument that the judgment should have been limited to one Defendant or the other," and as a result, "waive[d]" any argument they may have had on this point.

We find, however, ample evidence in the record showing Ribeiro and the Trust raised this very issue both before and during trial. In their trial brief, for example, RDI, Ribeiro, and the Trust contended that Choy's and Oloriz's "claim [wa]s essentially one for unpaid wages" that could only be asserted against their employing entity, RDI, and not the owner or officer of that entity. Ribeiro afterward testified in support of this contention. Although he signed both Choy's and Oloriz's employment contracts in his personal capacity and also signed Choy's contract on behalf of his Trust, he testified that neither he nor the Trust was thereby agreeing to cover RDI's obligations under the

8

contracts. Rather, according to his testimony, he signed the contracts in his individual capacity because the contracts imposed obligations on him personally, which were separate from RDI's obligations, and he signed Choy's contract on behalf of the Trust in error. On the latter point, he testified that he should have signed Choy's agreement on behalf of RDI, but instead mistakenly signed on behalf of the Trust. RDI, Ribeiro, and the Trust's counsel later reiterated these points during closing arguments, contending that neither Ribeiro nor the Trust should be found liable for RDI's obligations under the employment contracts.

In light of this record, we cannot sustain the court's finding that Ribeiro and the Trust waived their argument about joint and several liability by failing to offer argument or evidence on the issue at trial.

B

We also cannot sustain the court's later finding that Ribeiro and the Trust were untimely in filing, in response to the June 3, 2015 statement of decision, their objections in which they cited the above evidence and asked the court to reconsider its finding of waiver.

A party may file objections to a "proposed statement of decision" within 15 days of service of the decision. (Rule 3.1590(g).) The issue here is which of the court's decisions qualified as the "proposed statement of decision"—the April 17, 2015 statement of intended decision, as the court believed, or the June 3, 2015 statement of decision, as Ribeiro and the Trust contend? In answering this question, we consider first the various forms that a court's tentative decision can take. As Ribeiro and the Trust note, a court may, in its tentative decision following trial, (1) "[s]tate that it is the court's proposed statement of decision, subject to a party's objection"; (2) "[i]ndicate that the court will prepare a statement of decision"; (3) "[o]rder a party to prepare a statement of decision"; or (4) "[d]irect that the tentative decision will become the statement of decision unless, within 10 days after announcement or service of the tentative decision, a

9

party specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision." (Rule 3.1590(c).)

Beginning generally along the path allowed under the fourth option, the trial court issued its April 17, 2015 statement of intended decision and informed the parties that the intended decision would become the statement of decision unless a party timely filed "a proposal or objection to its contents." In response, RDI, Ribeiro, and the Trust timely filed "a proposal" to the decision's contents. Specifically, they requested that the court address in a statement of decision whether RDI alone was responsible for paying Choy's and Oloriz's severance pay—something the court's April 17 intended decision did not cover. The court afterward, as requested, addressed this issue in its June 3, 2015 statement of decision, finding all defendants jointly and severally liable. But the court then deprived RDI, Ribeiro, and the Trust of any opportunity to object to the court's decision on this newly addressed matter.

We find the court erred in doing so. Had the court informed the parties in its April 17, 2015 statement of intended decision that the decision was "the court's proposed statement of decision, subject to a party's objection," we would perhaps agree with the court's reasoning that the objections had been filed too late. An instruction of that sort is a permissible one under rule 3.1590(c)(1). The court, however, could not invite the parties to offer proposals to the content of its April 17 intended decision, apparently under rule 3.1590(c)(4), and then once the parties proposed those controverted matters to be addressed, deprive them of any opportunity to object to the newly added content. Rule 3.1590(c)(4) contemplates that after a party timely "specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals," the court will issue a statement of decision covering those controverted issues and then allow the parties to raise objections to the resulting statement of decision. (Rule 3.1590(c)(4), (f), (g).) But although the court here issued a statement of decision covering those

10

controverted issues raised by RDI, Ribeiro, and the Trust, it never afforded them this opportunity to raise objections. That was error. (Rule 3.1590(c)(4), (f), (g); cf. *Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129 [court wrongly deprived the appellants of an opportunity to object to the court's statement of decision "[b]y labeling the minute order a statement of decision and ignoring appellants' request for the issuance of such a statement"].)

## II

We next turn to Ribeiro and the Trust's contention that the court erred in finding them, along with RDI, jointly and severally liable for paying the severance amounts owed Choy and Oloriz.

The trial court concluded that Ribeiro was jointly and severally liable to pay Choy's and Oloriz's severance pay because he had signed both their contracts in his individual capacity, and it concluded that the Trust was also jointly and severally liable to pay Choy's severance pay because Ribeiro, while purportedly acting on behalf of the Trust, had signed Choy's contract. Although the court never clearly explained its legal rationale in its statement of decision, it appeared to adhere to the alter ego theory of liability alleged in Choy and Oloriz's complaint. Choy and Oloriz, abandoning this theory on appeal, offer two additional legal theories to support the court's ruling. First, they contend Ribeiro and the Trust are RDI's successors and assigns and are, as a result, liable for RDI's obligations. Second, they claim that Ribeiro and the Trust, to the extent they signed the employment contracts, agreed to act as guarantors who would cover RDI's obligations in the event of RDI's default. Ribeiro and the Trust object that neither the court's theory nor Choy and Oloriz's theories are legally tenable on this case's record.

We consider each theory of liability in turn.

## A

First, for the reasons Ribeiro and the Trust offer, we cannot sustain the lower court's finding that RDI, Ribeiro, and the Trust are all alter egos of one another.

11

Courts, in limited circumstances, will put aside a corporation's separate status and hold its shareholders or directors personally liable for the corporation's actions or debts. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 (*Sonora Diamond*).)  To disregard the corporate entity, a court must find "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." (*Automotriz etc. De California v. Resnick* (1957) 47 Cal.2d 792, 796.)  In determining whether "the separate personalities of the corporation and the individual no longer exist," courts consider a variety of factors, including, for example, the commingling of funds, inadequate capitalization, disregard of corporate formalities, one entity's representation that it is liable for a related entity's debts, and a shareholder's use of corporate assets as if his or her own.  (*Sonora Diamond*, at pp. 538-539.)  Courts have cautioned that application of the alter ego doctrine "is an extreme remedy, sparingly used." (*Id.* at p. 539.)  It is not satisfied merely because a creditor will remain unsatisfied if the corporate veil is not pierced.  (*Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 842.)  Rather, there must be, in addition to the requisite unity of interest, "some conduct amounting to bad faith mak[ing] it inequitable . . . for the equitable owner of a corporation to hide behind its corporate veil." (*Ibid.*)

Appearing to rely on this doctrine, the trial court found Ribeiro and the Trust liable for RDI's obligations because (1) Ribeiro and the Trust signed one of both of the employment agreements, (2) RDI, Ribeiro, and the Trust all answered, demurred, and later sought summary judgment jointly, and (3) Ribeiro persuaded Choy and Oloriz to join RDI and promised each severance pay as an incentive to relocate from their prior positions.

The record, however, rejects several of the court's factual findings.  The court found, for example, that RDI, Ribeiro, and the Trust all answered, demurred, and later

sought summary judgment jointly. But only Ribeiro and the Trust, and not RDI, demurred to Choy and Oloriz's complaint. And RDI, Ribeiro, and the Trust never sought summary judgment at all; only Choy and Oloriz did so. The court's finding that Ribeiro persuaded Oloriz to join RDI also strayed from the facts. According to Oloriz, Ribeiro's father, not Ribeiro, convinced him to join RDI.

But even accepting the court's factual findings as true, these findings still could not sustain the legal conclusion that RDI, Ribeiro, and the Trust are each other's alter egos. To begin, two of the court's three findings on this topic have limited, if any, relevance. First, we find it largely irrelevant that RDI, Ribeiro, and the Trust jointly filed papers contesting Choy and Oloriz's allegations. For reasons of economy, related entities often defend suits collectively, and we do not find it remarkable that RDI, Ribeiro, and the Trust did so here. For similar reasons, we would not consider Choy and Oloriz one and the same simply because they acted collectively in this action. Second, assuming Ribeiro persuaded Choy and Oloriz to join RDI, we also find that fact to be of marginal relevance. Ribeiro, as the president of a small company, would be expected to play some role in the recruitment of upper management like Choy and Oloriz. We find nothing particularly significant in his doing so.

In the end, we are left principally with the fact that Ribeiro and the Trust signed one of both of the employment agreements. But that fact alone could not sustain the finding that RDI, Ribeiro, and the Trust were all effectively one under the alter ego doctrine—which again, offers "an extreme remedy, sparingly used." (See *Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 539.) And we do not find other evidence in the record sufficient to support this finding. Nor do we find any evidence that would support a finding that Ribeiro or the Trust acted in bad faith with respect to Choy and Oloriz—a necessary requirement to invoking the alter ego doctrine. (*Hollywood Cleaning & Pressing Co. v. Hollywood Laundry Service, Inc.* (1932) 217 Cal. 124, 129 ["Bad faith in one form or another must be shown before the court may disregard the fiction of separate

13

corporate existence."]; *Sonora Diamond*, at p. 539 [without evidence of wrongdoing, the "alter ego doctrine cannot be invoked"].)  Choy and Oloriz, in fact, never appear to have even alleged bad faith.

In sum, even after making all reasonable inferences in favor of Choy and Oloriz, we simply cannot find evidence sufficient to support the invocation of the alter ego doctrine.

B

We also find no merit to Choy and Oloriz's alternative argument that the court's judgment should be affirmed on the theory that Ribeiro and the Trust are RDI's successors and assigns.

As Choy and Oloriz note, RDI's obligations under the employment contracts also applied to RDI's "successors and assigns."  Because the Trust owns RDI and Ribeiro is the Trust's beneficiary and trustee, Choy and Oloriz contend Ribeiro and the Trust are RDI's successors and assigns and are thus responsible for RDI's obligations.

Choy and Oloriz, however, confuse a company's shareholders with its successors and assigns.  A company's successor or assignee is a separate entity that acquires some or all the company's assets and liabilities.  (See Black's Law Dict. (10th ed. 2014) p. 142, col. 2 [an assignee is "[o]ne to whom property rights or powers are transferred by another"]; *id.*, p. 1660, col. 2 [a successor corporation is an entity "vested with the rights and duties of an earlier corporation"].)  A shareholder, in contrast, may wholly own a corporation, but it does not for that reason own or have legal title to the company's assets and liabilities.  (See *Dole Food Co. v. Patrickson* (2003) 538 U.S. 468, 475 [155 L.Ed.2d 643] ["A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary"].)

Although Choy and Oloriz attempt to characterize Ribeiro and the Trust as RDI's successors and assigns, they never allege that Ribeiro and the Trust have somehow acquired RDI's obligation to provide for their severance pay.  They instead suggest that

14

RDI maintains this obligation to pay these amounts—in which case there has been no successor or assignee of these liabilities—yet also contend that Ribeiro and the Trust, simply because of their ownership interest in RDI, are simultaneously responsible for these same liabilities. That position, however, ignores the "basic tenet of American corporate law . . . that the corporation and its shareholders are distinct entities," and cannot be accepted. (*Dole Food Co. v. Patrickson*, *supra*, 538 U.S. at p. 474; see also *United States v. Armour & Co.* (1971) 402 U.S. 673, 680 [29 L.Ed.2d 256] [distinguishing between a corporation's successors and assigns and the corporation's stockholders' successors and assigns]; *Bing Crosby Minute Maid Corp. v. Eaton* (1956) 46 Cal.2d 484, 487 ["In this state a shareholder is ordinarily not personally liable for the debts of the corporation; he undertakes only the risk that his shares may become worthless."].)

C

Finally, we reject Choy and Oloriz's contention that Ribeiro is liable as a guarantor who promised to answer for RDI's debts. But we find the Trust's potential liability on this ground more complicated and ultimately conclude that remand is appropriate to determine the Trust's liability, if any, for RDI's obligations.

1

In support of their guarantor theory of liability, Choy and Oloriz first cite several decisions from other jurisdictions finding that an officer of a company who twice signed a promissory note—once in his representative capacity and once in his individual capacity—was presumed, as a result, to have personally endorsed the note.[3] The Ninth

---

[3] Choy and Oloriz also cite a California case they suggest stands for the same, but their cited case did not concern someone who was presumed to have guaranteed a loan in his individual capacity; rather, it concerned someone who expressly guaranteed the loan in his individual capacity. (See *Sebastian International, Inc. v. Peck* (1987) 195

Circuit in *FDIC v. Woodside Construction, Inc.* (9th Cir. 1992) 979 F.2d 172, one example of their cited cases, held as much based on the Uniform Commercial Code (the UCC), which provides that representatives who sign their names to an instrument, without showing they signed in a representative capacity, are personally liable. (*FDIC,* at p. 175.)

Although Choy and Oloriz focus on the law in other jurisdictions, California law, which has codified the UCC, provides the very same rule for signatories of promissory notes and similar negotiable instruments. (See Cal. U. Com. Code, § 3402, subd. (b)(2).) But the UCC does not govern employment contracts, and so these authorities are of limited relevance here. (See, e.g., *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1187 [contracts for services fall outside the scope of the UCC].)

California law on contracts generally, however, provides certain presumptions that are somewhat comparable to those found in the UCC. We note two in particular here. First, a "promise, made in the singular number, but executed by several persons, is presumed to be joint and several." (Civ. Code, § 1660; see also *Bagley v. Cohen* (1898) 121 Cal. 604, 605-606 [a promise in the first person singular (" 'I, E. A. Cohen, do hereby guarantee . . .' "), but executed by several persons, created a joint and several obligation].) Second, "[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." (Civ. Code, § 1659; see also *Shelton v. Michael* (1916) 31 Cal.App. 328, 330 [the defendants who together agreed to pay a contractor to build a road, which would be beneficial to each of them, were jointly and severally liable for the contractor's fees].) But neither of these presumptions help Choy and Oloriz.

Cal.App.3d 803, 806 [the "terms of the guaranty referred to [the appellant] in his individual capacity"].)

Starting with Ribeiro, had Ribeiro and RDI stated that they together promised to pay Choy's and Oloriz's base salary for three years following termination, we would presume the promise to be joint and several in nature. (See Civ. Code, § 1659.) Or instead had the employment contracts been between the employees and RDI only, and had Ribeiro still signed the contracts in both his representative and individual capacity, we would perhaps presume that Ribeiro was agreeing to be personally liable for RDI's obligations. (See *id.*, § 1660.) On those facts, we might say that RDI's promises under the contracts were executed by both RDI and Ribeiro, suggesting that Ribeiro was in effect saying, "I agree." (See 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 109, p. 153.) But the facts here are quite different. RDI and Ribeiro offered separate promises for different performances under the employment contracts. RDI, labeled "Employer" under the contracts, promised to pay Choy's and Oloriz's base salary and bonuses, and in the event of their early termination, would also pay their "current base salary for three (3) years" following termination. Ribeiro, separately, promised to pay Choy and Oloriz a share of the distributions he received from certain LLCs. Under established precedent, these separate promises created several, not joint, obligations with respect to Ribeiro and RDI. (See *Freeman v. Jergins* (1954) 125 Cal.App.2d 536, 562 [" 'Where two or more parties to a contract promise separate performance, to be rendered respectively by each of them, . . . each is severally bound for the performance which he promises and is not bound jointly with any of the others.' "]; see also *Spangenberg v. Spangenberg* (1912) 19 Cal.App. 439, 450 ["where several persons obligate themselves to pay several sums of money, their obligation is several and not joint, notwithstanding that the sum agreed to be paid by each goes to make up an aggregate sum"]; *Moss v. Wilson* (1870) 40 Cal. 159, 162-163 [same]; 9 Corbin on Contracts (rev. ed. 1995) § 52.5, p. 294.)

We also find neither of these statutory presumptions applicable against the Trust under Choy's contract—the one contract the Trust signed. First, we cannot say, under

Civil Code section 1659, that the Trust "unite[d]" in a joint promise with RDI to cover Choy's severance pay. The contract referred not to RDI's and the Trust's united obligation to cover Choy's severance pay, but rather referred only to the obligation of "Employer," defined as RDI, to cover this pay. We also cannot find, under Civil Code section 1660, that Choy's contract included a "promise, made in the singular number, but executed by several persons." Choy's contract, as already discussed, did not involve a promise "made in the *singular* number"; rather, it involved multiple parties (namely, Ribeiro and RDI) offering separate promises. The Trust's role, whatever it may be, thus cannot be resolved by either of these statutory presumptions.

2

Choy and Oloriz next maintain that Ribeiro and the Trust must nonetheless be found liable as guarantors because, per Civil Code section 1654, ambiguities in a contract should be interpreted "most strongly" against the party who drafted the contract, unless the ambiguity can be resolved by another rule of interpretation.

Beginning with Ribeiro, we find no ambiguity in terms of whether he was responsible for Choy's and Oloriz's severance pay. Again, RDI and Ribeiro offered separate promises for different performances under the employment contracts, and only RDI promised to cover severance pay. These separate promises—under well-established rules of contract interpretation—created several, not joint, obligations with respect to Ribeiro and RDI. (See, e.g., *Freeman v. Jergins*, *supra*, 125 Cal.App.2d at p. 562.) In other words, under these separate promises, RDI would be responsible for its promises and Ribeiro would be responsible for his; but neither would be responsible for the other's. Finding no ambiguity here, we thus need not result to the rule for interpreting ambiguities to determine Ribeiro's obligations. (See *Burr v. Western States Life Ins. Co.* (1931) 211 Cal. 568, 576 ["No term of a contract is either uncertain or ambiguous if its meaning can be ascertained by fair inference from other terms thereof"].)

18

But we agree that the Trust's obligations under Choy's contract were less clear. The contract never explained the role, if any, that the Trust was intended to play. Perhaps the Trust was mistakenly listed, as Ribeiro and the Trust contend. Or perhaps the Trust was intended to act as a guarantor, as Choy and Oloriz counter. None of this, however, is clear from the face of the contract. We thus agree Choy's contract includes a patent ambiguity in terms of the Trust's obligations. But we do not find that this ambiguity mandates a decision in Choy's favor. It might have done so were no other evidence offered to resolve the ambiguity. But RDI, Ribeiro, and the Trust did offer extrinsic evidence to resolve the ambiguity, and as discussed in part I of the Discussion, the trial court erroneously refused to consider this evidence.

The court, in its June 3, 2015 statement of decision, found RDI, Ribeiro, and the Trust failed to offer at trial "any evidence" or "any argument that the judgment should have been limited to one Defendant or the other," and so waived the issue as a result. The court also offered similar sentiments in two later rulings. After RDI, Ribeiro, and the Trust notified the court that they in fact did raise the issue, the court found their objections to the statement of decision untimely and, in any event, again concluded they had nonetheless waived the issue by failing to offer evidence or argument on the issue at trial. Echoing these findings in a later ruling, the court found Ribeiro and the Trust had only "briefly and incompletely raised" their argument that liability should be limited to RDI and had "not presented" this argument at all at trial.

As discussed in part I of the Discussion above, however, the court erred in finding Ribeiro and the Trust had waived the issue. RDI, Ribeiro, and the Trust's counsel did object to the court's statement of decision in a timely fashion, and did offer at trial argument and evidence that RDI alone should have been liable for the severance payments. Ribeiro, for example, testified that he mistakenly signed Choy's agreement on behalf of the Trust, and instead should have signed on behalf of RDI. RDI, Ribeiro, and the Trust also offered the language of the contract itself. Choy's contract identified the

19

parties to the contract as Choy, Ribeiro, and RDI, but then included signature lines for only two of these three parties—Choy and Ribeiro. It offered no signature line for RDI, even though this was an employment contract and RDI was the employer. And it instead included a signature line for the Trust, even though the body of the contract made no mention of the Trust or its relationship to the parties. Given these facts, RDI, Ribeiro, and the Trust's counsel maintained at trial that the Trust's signing of Choy's agreement was "in error."

Because the court improperly refused to consider this evidence in its decision, we cannot sustain the court's decision on the theory that all ambiguities are to be resolved against the drafter. The rule on construing ambiguities in Civil Code section 1654 "is to be used *only* when there is no extrinsic evidence available to aid in the interpretation of the contract or where the uncertainty cannot be remedied by other rules of interpretation." (*Steller v. Sears, Roebuck & Co.* (2010) 189 Cal.App.4th 175, 183, italics added.) And when, as here, a court improperly refuses to consider extrinsic evidence offered by one party to explain an ambiguity, and then construes the ambiguity in favor of the other party, the judgment cannot stand. (See *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 40-41 [reversing judgment because the trial "court erroneously refused to consider extrinsic evidence offered to" interpret an ambiguity in a contract]; *Steller*, at pp. 183-184.)

Choy and Oloriz, in response, maintain that ambiguities in the contract must be construed against the Trust—in which case, extrinsic evidence to resolve the ambiguities would be admissible—yet also contend that extrinsic evidence is inadmissible because the contract contains no ambiguities. Quoting *Otis Elevator Co. v. Berry* (1938) 28 Cal.App.2d 430, Choy and Oloriz assert "that where a person signs his own name to a written contract, without . . . disclosing that he acts solely as agent, extrinsic evidence is inadmissible to prove that he acted solely as agent and was not a party to the contract." (*Id.* at p. 432.) But the court's reasoning in *Otis Elevator Co.* was premised on its finding

the contract there unambiguous.  (*Id.* at pp. 432-433.)  The appellant in *Otis Elevator Co.* signed a contract that made no mention of his alleged principal apart from an address, and in the court's view, the contract unambiguously bound the appellant personally as a result.  (*Id.* at p. 433.)

But Choy's contract is quite different.  The contract included three parties—Choy, Ribeiro, and RDI—and included three signature lines.  But these signature lines, rather than matching the named parties, instead listed Choy, Ribeiro, and a fourth entity never mentioned in the body of the contract, the Trust.  These facts created an ambiguity about the Trust's intended role.  And as discussed above, we cannot resolve this ambiguity by resorting to the statutory presumptions dealing with additional signatories.  This unresolved ambiguity about the Trust's role thus warranted the consideration of extrinsic evidence.  (See *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co., supra,* 69 Cal.2d at p. 37 ["The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."]; *Hurlbut v. Quigley* (1919) 180 Cal. 265, 270 [parol evidence found admissible to show whether several endorsers of a loan were joint endorsers (who were simultaneously liable) or successive endorsers (who were successively liable in the order in which their names appeared)]; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [parol evidence is admissible to construe an ambiguous writing]; see also *Sterling v. Taylor* (2007) 40 Cal.4th 757, 767 ["Extrinsic evidence can also support reformation of a memorandum to correct a mistake."].)

Although we reverse the trial court's finding against the Trust, none of this is to say that the court could not have found against the Trust on the theory that ambiguities are to be construed against the drafting party.  Perhaps it could.  But before doing so, it was first required to consider Ribeiro and the Trust's offered extrinsic evidence.  As the court in *Steller v. Sears, Roebuck & Co.*, *supra*, 189 Cal.App.4th 175 explained, "[o]nly

21

in those instances where the extrinsic evidence is either lacking or is insufficient to resolve what the parties intended the terms of the contract to mean will the rule that ambiguities are resolved against the drafter of the contract be applied." (*Id.* at pp. 183-184.) We thus remand on this issue to allow the court to reevaluate whether the Trust may be held liable after considering the parties' offered extrinsic evidence that is already in the record.

III

Finally, we consider Choy and Oloriz's claim that Ribeiro and the Trust, by citing only evidence in their favor, waived their argument that the evidence is insufficient to support the trial court's judgment.

As Choy and Oloriz note, an appellant "who cites and discusses only evidence in his [or her] favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.) Choy and Oloriz contend Ribeiro and the Trust did just that, but in support of the claim, they cite only immaterial facts that Ribeiro and the Trust allegedly neglected to reference.

First, Choy and Oloriz contend Ribeiro and the Trust failed to mention that the two employment contracts also applied to RDI's successors and assigns. But we do not fault Ribeiro and the Trust for failing to cite irrelevant contract details. (See part II.B of the Discussion, *ante*.)

Second, Choy and Oloriz object that Ribeiro and the Trust failed to cite the law on interpreting contract ambiguities against the drafting party. We would not, however, say that a party failed to fairly present the evidence simply because the party declined to discuss all the relevant law.

Third, they contend Ribeiro and the Trust misquoted the terms of Oloriz's agreements. According to Ribeiro and the Trust, Oloriz's contract stated that "Employee and Employer acknowledge that California is an 'at-will' employment state." That

22

language, however, actually appeared only in Choy's contract. As Choy and Oloriz note, Oloriz's contract used slightly different language, stating instead that "Employer and Employee acknowledge that Employee may be terminated at any time without cause." Although Choy and Oloriz make much of this error, we find this slight slip immaterial.

Fourth, Choy and Oloriz claim Ribeiro and the Trust misstated the reason for Oloriz not receiving a share of the distributions that Ribeiro received from his LLCs. Perhaps so, but it is an irrelevant point. This appeal has nothing to do with those distributions.

Fifth, Choy and Oloriz contend that Ribeiro and the Trust wrongly suggested that their complaint alleged only an alter ego theory of liability. According to Choy and Oloriz, they alleged more than merely an alter ego theory of liability; they also alleged that Ribeiro was liable for RDI's obligations because the "individuality and separateness of [the two] have ceased to exist" and their "business affairs . . . cannot be reasonably segregated." But those allegations were not part of a separate theory of liability; they were instead the alleged factual premise to invoke the alter ego doctrine. Choy and Oloriz claimed Ribeiro and RDI were one and the same, and then based on that factual allegation, they alleged the legal conclusion that RDI was merely the alter ego of Ribeiro.

Finally, Choy and Oloriz raise several objections to Ribeiro and the Trust's characterization of their causes of action at the trial level. In their opening brief, Ribeiro and the Trust noted, for example, that Choy and Oloriz never mentioned their cause of action for conversation in their trial brief and appeared to have abandoned the claim as a result. But, as Choy and Oloriz counter, they in fact did reference this cause of action in their trial brief and the trial court specifically discussed the claim in its decision. Even so, we do not see how this fact is material to this appeal.

Choy and Oloriz, in sum, may have caught several minor errors in Ribeiro and the Trust's recitation of the facts, but insignificant errors of this sort cannot serve as a basis for rejecting an appellant's claims.

23

DISPOSITION

The judgment is reversed to the extent it found Ribeiro and the Trust jointly and severally liable for Choy's and Oloriz's severance pay. We remand to the trial court with directions to (1) enter judgment in favor of Ribeiro on this issue, and (2) reevaluate whether the Trust may be held liable after considering the parties' offered extrinsic evidence.

Ribeiro and the Trust are entitled to recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

        /s/          
BLEASE, Acting P. J.

We concur:

      /s/        
DUARTE, J.

      /s/        
RENNER, J.

24